# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2968-21
A-1043-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ELMO M. RIVADENEIRA,
a/k/a PETEY NA,

    Defendant-Appellant.

_____

        Argued (A-2968-21) and Submitted (A-1043-22)
        October 17, 2023 – Decided January 9, 2024

        Before Judges Haas and Puglisi.

        On appeal from the Superior Court of New Jersey, Law
        Division, Hudson County, Indictment No. 07-03-0435.

        Elmo M. Rivadeneira, appellant, argued the case pro se.

        Andrew Frank Guarini, Assistant Prosecutor, argued
        the cause for respondent (Esther Suarez, Hudson
        County Prosecutor, attorney; Andrew Frank Guarini, on
        the briefs).

PER CURIAM

In these appeals, calendared back-to-back and consolidated for purposes of this opinion, defendant Elmo Rivadeneira appeals from the March 30, 2022 Law Division order denying his third petition for post-conviction relief (PCR) and the July 29, 2022 order denying his motion for a new trial. We affirm both orders.

## I.

The following facts are taken from our decision affirming defendant's conviction after a jury trial:

> The victim, who was sixteen years old, was kidnapped while walking home from a bus stop in North Bergen on the night of May 17, 2005. The assailant grabbed her in a bear hug, and placed one hand near her neck as though he had a knife. He forced the victim into a car, punched her and threatened to kill her. He drove her to a deserted area with tall weeds, once again threatened to kill her, forced her to perform fellatio, and then raped her vaginally. He also took all of her clothing, cell phone, and jewelry. He then drove her to another deserted, weed-choked lot where he raped her anally, again threatening her with death if she did not cooperate. The victim testified that the assailant wore a condom and, after the assaults, he wiped her genital and anal areas with a liquid, which he said would avoid leaving evidence on her body. The assailant also wore blue latex gloves and had a stocking over his head and face. During one of the assaults, he repeatedly rubbed his sweaty face over the victim's face.
>
> According to the victim, as the assailant drove her from one location to another, she smelled cigar smoke and he

told her that he was smoking Black and Mild cigars. She could not see his face during the attacks, but she saw his eyes, which she described as large and bulging. She also described his very distinctive voice, which she testified sounded like "Kermit the Frog" because he sounded as though "he was talking through his throat." She described the assailant as thin and short but very strong.

Finally, the assailant drove the victim to a car repair facility in Newark, where he forced her to put on an oversized pair of white overalls and placed her in a white Toyota parked in the facility's lot. After once again threatening to kill her if she looked at him, he drove away. The victim was able to make her way to a local hospital where she was examined and a buccal swab of her DNA was taken. Thereafter, the police drove the victim around Newark until she was able to identify the car repair lot where the assailant had released her, as well as the white Toyota parked there.

Near the spot where the victim was released, the police found a black sheer stocking which, upon being tested, proved to have the victim's DNA on the outside and defendant's DNA on the inside. The police also found a blue latex glove on the ground near the location where the victim was initially kidnapped. The State presented testimony that defendant had previously worked as an auto mechanic in the area of Newark where the victim was released, that he typically wore blue latex gloves at work, and that the car repair facility where the victim was released had a business relationship with defendant's employer.

One of defendant's former girlfriends, Ms. Teicher, testified that defendant had a very distinctive raspy voice, and was short, thin, and muscular. She also testified that on multiple occasions during their

3

relationship, defendant would direct her to drive him to vacant lots overgrown with high weeds, where they would have sex in the back of her car. She also testified that defendant smoked Black and Mild cigars.

Another witness, Mr. Cancinos, testified that in 2006, when defendant was in jail awaiting trial in this case, defendant sent Cancinos a letter asking him to "stage" a rape, with the cooperation of a female friend, and leave some of defendant's blood and pubic hair at the scene. Defendant enclosed packets, apparently containing blood and hair, with the letter. Defendant explained to Cancinos that, if Cancinos did as he asked, it would then appear that someone was trying to frame defendant for a second rape, which he could not possibly have committed because he was in jail. Defendant believed that evidence would, in turn, cast doubt on the State's DNA evidence in the upcoming prosecution. According to Cancinos, he refused defendant's request, and burned the letter.

Ms. Dahl, who had been defendant's girlfriend at the time, corroborated Cancinos's testimony. She testified that Cancinos, who was a mutual friend of hers and defendant, told her about defendant's request, and asked her advice. She testified that Cancinos also showed her the letter, which was in defendant's handwriting, and that she read it. She advised Cancinos not to go along with defendant's plan.

[State v. Rivadeneira, No. A-3348-11 (App. Div. May 4, 2016) (slip op. at 3-6) (footnote omitted)].

Defendant was found guilty of first-degree kidnapping, N.J.S.A. 2C:13-1(b); three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); fourth-degree child abuse, N.J.S.A. 9:6-1, -3; third-degree aggravated criminal

sexual contact, N.J.S.A. 2C:14-3(a); first-degree robbery, N.J.S.A. 2C:15-1; third-degree aggravated assault involving significant bodily injury, N.J.S.A. 2C:12-1(b)(1); and third-degree terroristic threats, N.J.S.A. 2C:12-3(b). We affirmed the conviction but remanded to correct a clerical error in the judgment of conviction and to clarify the merged counts and sentence. Id. at 15-16. On remand, the trial court merged the aggravated assault with the kidnapping and aggravated sexual assault convictions, and sentenced defendant to an aggregate term of fifty years with an eighty-five percent parole ineligibility term pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On November 14, 2016, defendant filed his first petition for PCR, which was denied. He appealed the denial and while the appeal was pending, he filed a second petition for PCR. He then filed motions in the appeal for a remand and to supplement the record for "newly discovered evidence," which we granted. On remand, the trial court denied the first petition, and we affirmed that decision. State v. Rivadeneira, No. A-5573-17 (App. Div. May 19, 2020). From the record before us, it does not appear that the second petition was addressed by the trial court.

On February 23, 2021, defendant filed a petition for a writ of habeas corpus in the United States District Court, District of New Jersey. On February

A-2968-21

23, 2022, the federal court granted his motions to perfect the record and for a stay of the petition to permit exhaustion of his claims in state court.

On March 30, 2022, defendant filed his third petition for PCR, arguing the State committed a Brady[1] violation by failing to produce a supplemental DNA laboratory report from 2011, which he claimed contained exculpatory evidence. He argued the lab report was "newly discovered evidence" because he was unaware of its existence until the State produced it in his federal habeas corpus petition. He also argued his counsel was ineffective. The petition was denied the same day.[2]

On May 20, 2022, defendant filed a motion for a new trial based on the same grounds as his petition for PCR. The court denied the motion by order dated July 29, 2022, which stated: "Defense's Motion is Denied. Appellate Division (A-005573) affirmed and did not remand case to trial division pursuant to N.J. Ct. R. 3-20."

II.

---

[1] See Brady v. Maryland, 373 U.S. 83 (1963).

[2] The trial court's "order" consists of a memorandum to the judge from the Hudson County Criminal Division Manager dated March 30, 2022, wherein the judge determined "[g]ood [c]ause does not exist" to refer defendant's request for counsel to the Office of the Public Defender, and indicated "PCR barred." The memorandum mistakenly stated it was defendant's fourth petition.

A-2968-21

Defendant raises the following issues for our consideration in his appeal of the denial of his PCR petition:

POINT 1.

THE TRIAL COURT ERRED WHEN IT BARRED [DEFENDANT'S] SUBSEQUENT PCR PETITION. BECAUSE THE PCR PETITION WAS APPROPRIATELY FILED PURSUANT TO THE EXCEPTION OF RULE 3:22-4(b)(2)(B) AND RULE 3:22-12(a)(2)(B). THUS, THE TRIAL COURT SHOULD HAVE ADDRESSED THE MERITS OF [DEFENDANT'S] CLAIMS, PROCEDURALLY AND SUBSTANTIVELY, IN ACCORD WITH THE ABOVE EXCEPTION AND [DEFENDANT'S] RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION. THEREFORE, THE PCR PETITION HERE, SHOULD BE REMANDED WITH INSTRUCTIONS TO THE TRIAL COURT TO CONSIDER AND RULE ON THE MERITS OF [DEFENDANT'S] APPROPRIATELY FILED SUBSEQUENT PCR PETITION.

POINT II.

THE TRIAL COURT ERRED WHEN IT DENIED [DEFENDANT'S] APPLICATION TO ASSIGN COUNSEL ON SUBSEQUENT PCR PETITION PURSUANT TO RULE 3:22-6(b).

POINT III.

ALTERNATIVELY, TO POINT I AND POINT II ABOVE, THE APPELLATE COURT SHOULD EXERCISE ORIGINAL JURISDICTION TO DETERMINE THE FACTUAL AND LEGAL

7

MERITS OF [DEFENDANT'S] PCR PETITION, DE NOVO. IN DOING SO, THE APPELLATE COURT SHOULD REVERSE [DEFENDANT'S] CONVICTION AND ORDER A NEW TRIAL BECAUSE THE PROSECUTORIAL MISCONDUCT, IN WITHHOLDING THE 2011 LAB REPORT FROM THE DEFENSE AND THE JURY, VIOLATED [DEFENDANT'S] DUE PROCESS RIGHT TO A FAIR TRIAL AND DUE PROCESS RIGHT TO PRESENT A COMPLETE DEFENSE, IN VIOLATION OF THE FEDERAL AND STATE CONSTITUTIONS.

POINT IV.

INEFFECTIVE ASSISTANCE OF COUNSEL.

POINT V.

EVIDENTIARY HEARING.

Defendant raises the following issues for our consideration in his appeal of the denial of motion for a new trial:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED [DEFENDANT'S] MERITORIOUS MOTION FOR A NEW TRIAL, WHICH [DEFENDANT] BROUGHT UNDER THE GROUND THAT THE PROSECUTION HAD WITHHELD MATERIAL SPERM EVIDENCE FROM THE DEFENSE AND THE JURY IN VIOLATION OF THE BRADY RULE. AS SUCH, THE APPELLATE COURT SHOULD NOW REVIEW DE NOVO AND RECOGNIZE [DEFENDANT'S] TRUE BRADY CLAIM AND REVERSE [DEFENDANT'S] CONVICTION AND ORDER A NEW TRIAL.

8

A. THE APPELLATE DIVISION OWES THE TRIAL COURT'S FACTUAL AND LEGAL CONCLUSIONS NO DISCRETION AND SHOULD REVIEW [DEFENDANT'S] FACTUAL AND LEGAL CLAIMS DE NOVO.

B. THE FACTUAL ELEMENTS THAT ESTABLISH [DEFENDANT'S] <u>BRADY</u> CLAIM.

 1. <u>Brady</u>'s Favorability Requirement.

 2. <u>Brady</u>'s Suppression Requirement.

 3. <u>Brady</u>'s Prejudice Requirement.

We first address defendant's petition for PCR. We "will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). An appellate court does not "defer to a PCR court's interpretation of the law, a legal conclusion is reviewed de novo." Id. at 540-41. However, where there is no evidentiary hearing, an appellate court may "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Harris, 181 N.J. 391, 421 (2004).

Pursuant to Rule 3:22-4(b), a second or subsequent petition for PCR is barred unless:

(1) it is timely under R. 3:22-12(a)(2); and

(2) it alleges on its face either:

(A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or

(B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or

(C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief.

Rule 3:22-12(a)(2) provides "no second or subsequent petition shall be filed more than one year after the latest of:"

(A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

(B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

(C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on

10

the first or subsequent application for post-conviction relief is being alleged.

The strict time bar imposed in these court rules may not be ignored or relaxed. State v. Jackson, 454 N.J. Super. 284, 292-94 (2018). Although it is bereft of any reasons for its decision, we agree with the trial court's determination the petition for PCR was time-barred. Because he was otherwise out of time, defendant sought to file his third petition under the "newly discovered evidence" exception contained in Rule 3:22-12(a)(2)(B). However, the document he claimed was new evidence, the 2011 supplemental laboratory report, does not contain any "new" information. Rather, it refers to a 2006 DNA laboratory report and reiterates what was contained in that report and already known to defendant—he was excluded as a contributor to the DNA sample found on the victim's overalls. This information was presented to the jury through testimony of the State's forensic scientist and reiterated in defense counsel's closing argument. Therefore, the 2011 supplemental report is not "new" information that would permit defendant to file his petition out of time.

Because the petition is fatally time-barred, the trial court correctly denied defendant's request for the assignment of counsel because it lacked good cause pursuant to Rule 3:2-6(b). We therefore affirm that order.

11

We next address defendant's appeal of the order denying his motion for a new trial. The trial court's ruling on a motion for a new trial "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. Although the trial court's order denying the motion only points to our decision and does not address defendant's substantive claims, we have reviewed defendant's contentions in light of the record and nevertheless find there was no miscarriage of justice.

Our Supreme Court has "stated repeatedly that to qualify as newly discovered evidence entitling a party to a new trial, the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981).

"A jury verdict rendered after a fair trial should not be disturbed except for the clearest of reasons." State v. Ways, 180 N.J. 171, 187 (2004). "Newly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Id. at 187-88.

A-2968-21

A defendant must demonstrate three elements to establish a <u>Brady</u> violation: "(1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case." <u>State v. Brown</u>, 236 N.J. 497, 518 (2019) (citing <u>State v. Nelson</u>, 155 N.J. 487, 497 (1998)). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). Here, defendant's motion for a new trial, which hinges on a <u>Brady</u> violation, fails because the information contained in the 2011 supplemental report was known to defendant and presented to the jury, which rendered a guilty verdict; therefore, he cannot show that the 2011 report would have changed the outcome of the trial.

To the extent we have not expressly addressed any issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2968-21